## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **CHARLES SANTOMENO,** | : | |
| | : | Civ. No. 2:12-3782 (KM) |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **OPINION** |
| | : | |
| **UNITED STATES MINERAL** | : | |
| **PRODUCTS COMPANY d/b/a** | : | |
| **ISOLATEK INTERNATIONAL,** | : | |
| | : | |
| **Respondent.** | : | |

**KEVIN MCNULTY, U.S.D.J.:**

This action comprises the motions brought by the Petitioner, Charles Santomeno, to vacate, and by the Respondent, United States Mineral Products Company d/b/a Isolatek International ("Isolatek") to confirm, a May 11, 2012, arbitration award in favor of Isolatek (the "Award"). The Award was rendered by Rolando Torres, Esq., an arbitrator assigned to resolve the parties' dispute by the American Arbitration Association (the "AAA") in accordance with the arbitration provision in Santomeno's employment contract. This motion is decided without oral argument. *See* Fed. R. Civ. P. 78(b).

The arbitrator found that Santomeno had breached his employment agreement and awarded Isolatek recoupment of certain salary and benefits it had paid to Santomeno. Santomeno moved to vacate part of the Award, arguing that the arbitrator exceeded his authority under the agreement by awarding recoupment of amounts paid outside the limitations period outlined in the arbitration provision of his employment agreement. Isolatek cross-moved to confirm the arbitration award.

For the reasons set forth below, Isolatek's Cross-Motion to Confirm the Award is granted because the award draws its essence from Santomeno's employment agreement. Santomeno's Motion to Vacate the Award is denied.

# I.   BACKGROUND[1]

## A. Summary

This dispute stems from the fraying of the employment relationship between Isolatek, a company that manufactures fire retardants, and Santomeno, a long-time employee at the executive level.

Santomeno began working for Isolatek in 1973 and, except for one year in the 1970s, stayed at Isolatek until 2009, ultimately serving as President and Chief Operating Officer. (Interim Arb. Opinion and Award (the "Interim Op.") at 3 [ECF No. 1-8]). When his contract was set to expire, he and Isolatek entered into a new employment agreement dated December 15, 2004 (the "Employment Agreement").[2]

In the spring of 2007, Isolatek's Board appointed a new CEO, Giovanni Pacheco. (*Id.* at 4). Pacheco and Santomeno disagreed on Santomeno's role. (*Id.*). On September 4, 2007, the conflict escalated when Santomeno refused to go on a business trip and instead indicated he would file for arbitration. (*Id.*). Pacheco then placed Santomeno on administrative leave, although all of the terms and conditions of the Employment Agreement remained in full force and effect. (*Id.* at 4-5). Santomeno's employment, and the Employment Agreement, terminated on January 31, 2009.[3] (Cohen Cert., Ex. C at 29 [ECF No. 1-6]).

A few months later, on June 17, 2009, Santomeno filed the underlying arbitration action, alleging that he was not paid his bonuses for 2006-2009 or his last three months' salary, as required by the Employment Agreement. (Interim Op. at 1). Isolatek counterclaimed for breach of contract, breach of duty of loyalty, and breach of the restrictive covenant in the Agreement, based on contacts between Santomeno and a competitor. (*Id.* at 1, 12-17). Santomeno's bonus claims for 2006-07 were denied on summary judgment

---

[1] The facts recited in the parties' Motions are stated to provide the background of the dispute. The Court is not making its own factual findings in this context.

[2] In 2001, the company was placed under bankruptcy protection after being named as a defendant in an asbestos litigation. Thus Santomeno actually entered into the contract with Isolatek's bankruptcy trustee.

[3] The Employment Agreement provided for a year of severance pay, which would have kept Santomeno on the payroll until January 31, 2010. (Empl. Agr. ¶ 3 [ECF No. 1-4])

because they were filed outside of the one year limitations period in the Employment Agreement. (*Id.* at 2). After holding an evidentiary hearing and reviewing documentary and testimonial evidence, the arbitrator entered an award in favor of Isolatek in the amount of $797,736.50. (Final Decision and Award at 7-8 [ECF No. 1-9 at 7-8]).

### B. The Employment Agreement

The Employment Agreement provided that Santomeno would serve as President and Chief Operating Officer. In this role, he would report directly to, and receive direction from, the Chairman and Chief Executive Officer. (Empl. Agr. ¶ 1 [ECF No. 1-4]). In general, Santomeno would be responsible for Isolatek's day-to-day operations, and throughout his tenure, his

> entire working time, energy, skill and best efforts shall be devoted to the performance of [his] duties [under the Employment Agreement] in a manner which will faithfully and diligently further the business of [Isolatek].

(*Id.*).

Santomeno and Isolatek agreed that any disputes related to the Employment Agreement would be submitted to "final and binding arbitration before a single arbitrator" in accordance with the AAA's National Rules for Resolution of Employment Disputes. The Employment Agreement contained a limitations period in which Santomeno or Isolatek could file for arbitration:

> To start the arbitration process, Employee or Company must submit a written request to AAA **within one (1) year of the date on which the event giving rise to a cause of action occurs**. . . . **Any failure to request arbitration within this time frame shall constitute a waiver by Employee or Company** of all rights to raise any claims in any forum arising out of any Claim that was subject to arbitration.

(*Id.* ¶ 6(d)) (emphasis added). The same provision also outlined the arbitrator's authority:

> The arbitrator shall have all of the power of a court of law and equity, including the power to order discovery, in the arbitrator's discretion, as is available under the then current Federal Rules of Civil Procedure, and **to grant legal and equitable remedies**.

3

(*Id.* ¶ 6(g)) (emphasis added).

### C. The Arbitration[4]

On June 17, 2009, Santomeno filed an arbitration grievance with the AAA, claiming that he was not paid the bonuses due under the Employment Agreement from 2006 to 2009. (Interim Op. at 1 [ECF No. 1-8]). On July 29, 2009, Isolatek asserted counterclaims for breach of contract, breach of duty of loyalty, and breach of the restrictive covenant based on contacts between Santomeno and a competitor. (*Id.* at 1, 12-17). Rolando Torres, Esq., of the AAA Employment Arbitration Tribunal was appointed as arbitrator. (Isolatek Br. at 2 [ECF No. 4-1]).

Isolatek moved for partial summary judgment, arguing that Santomeno's bonus claims for 2006 and 2007 were filed outside of the one year limitations period, which started on June 17, 2008, one year prior to Santomeno's filing. (Interim Op. at 2 [ECF No. 1-8]). The arbitrator granted the motion, limiting Santomeno's bonus claims to those occurring on or after June 17, 2008. (Decision on Motion for Summary Judgment at 6 [ECF No. 1-7]). The arbitrator heard testimony over eight days between September 21, 2009 and December 9, 2009. (Interim Op. at 2 [ECF No. 1-8]). Both Santomeno and Isolatek presented numerous witnesses, introduced evidence, and gave closing arguments. (*Id.*). Arbitrator Torres then issued an interim decision.

### D. The Interim Opinion and Award

After reviewing documentary and testimonial evidence, the arbitrator issued an Interim Opinion and Award, dated February 16, 2012, which found that Santomeno breached the Employment Agreement. (*Id.* at 19-22). Consequently, he was not entitled to a bonus, and Isolatak was entitled to recoupment of Santomeno's salary, benefits, and bonuses from 2008 and 2009. (*Id.*). Specifically, the arbitrator made the following findings:

- <u>Bonus Claims</u>: The Employment Agreement stated that Santomeno would be entitled to an annual bonus two times the highest paid

---

[4] Prior to Santomeno's filing his arbitration grievance, Isolatek sought an injunction to enforce the non-compete provisions of the Employment Agreement in the Superior Court of New Jersey, Chancery Division, Morris County, entitled *United States Mineral Products d/b/a Isolatek International v. Charles Santomeno and Flame Seal Products, Inc.*, No. MRS-C-70-09. (Interim Op. at 1 [ECF No. 1-8]; Isolatek Br. at 2 [ECF No. 4-1]). With the consent of the parties, the judge ordered the matter referred to arbitration. (*Id.*).

bonus paid to any current employee. (Empl. Agr. ¶ 2(c) [ECF No. 1-4]).
Santomeno argued that this provision entitled him to a bonus double
that of the CEO. (Interim Op. at 7 [ECF No. 1-8]). The arbitrator
interpreted the provision to mean an employee subordinate to
Santomeno because (1) Santomeno did not submit evidence that
supported his contention and (2) awarding a subordinate double the
bonus of the CEO would be counterproductive because of the CEO's
greater responsibility. (*Id.*). The arbitrator also rejected Isolatek's
argument that Santomeno orally waived his bonus because the
Employment Agreement required any modifications to be made in
writing. (*Id.* at 6). As to whether Santomeno was owed any annual
bonuses, Arbitrator Torres found that he was not because he
breached the Employment Agreement, as described below. (*Id.* at 21).

- Restrictive Covenant: The Employment Agreement contained a
  restrictive covenant, which included confidentiality and non-
  competition/non-solicitation clauses. (Empl. Agr. ¶ 5 [ECF No. 1-4]).
  Santomeno was further required to provide advance, written notice of
  engaging in any conduct that could reasonably be construed as
  violating those provisions. (*Id.* ¶ 5(i)). The arbitrator first found that
  the restrictive covenant was enforceable under New Jersey law
  because it was reasonable and the result of voluntary negotiations
  between represented parties with valid consideration exchanged.
  (Interim Op. at 10 [ECF No. 1-8]).

  - Duty of Loyalty: The arbitrator then noted that Santomeno owed
    a duty of loyalty to Isolatek because, by virtue of his executive
    responsibilities, he was in a fiduciary relationship with Isolatek.
    (*Id.* at 11). Arbitrator Torres found that Santomeno breached
    this duty of loyalty by, beginning in September 2007, repeatedly
    meeting with representatives of a competitor, Flame Seal,
    during his administrative leave without notifying Isolatek. (*Id.* at
    11-12, 19).

  - Confidentiality    and    Non-Competition/Non-Solicitation
    Provisions: The Employment Agreement prohibited Santomeno
    from usurping business opportunities for his or a competitor's
    benefit. (Empl. Agr. ¶ 5 [ECF No. 1-4]). The arbitrator first found
    that Flame Seal was a competitor of Isolatek for a particular fire

5

retardant product on which Santomeno advised Flame Seal.[5] (Interim Op. at 15 [ECF No. 1-8]). The arbitrator also found that Santomeno had specific knowledge of Isolatek's version of the product. (*Id.* at 16). Based on (1) testimony describing multiple meetings at which Santomeno and Flame Seal executives discussed marketing strategies for Flame Seal's competing product and (2) emails from Santomeno that provided an "elaborate market breakdown of the **'North American Spray Foam Industry'**" and sought greater information about the product to improve its marketing, the arbitrator found that Santomeno violated the confidentiality, non-compete, and non-solicit provisions of his agreement. (*Id.* at 16-17) (emphasis in original).

Arbitrator Torres then had to determine the damages to which Isolatek was entitled based on Santomeno's breach. (*Id.* at 20). He reviewed New Jersey case law as it pertained to recoupment of wages by a disloyal employee, including *Cameco, Inc. v. Gedicke*, 157 N.J. 504, 724 A.2d 783 (1999). (Interim Op. at 20 [ECF No. 1-8]). Arbitrator Torres outlined the factors that *Cameco* highlighted:

> 1) Were there contractual provisions addressing the issue?
>
> 2) Whether the employer knew of or agreed to its employee's secondary profit seeking activities?
>
> 3) The employee's status and his or her relationship to the employer, i.e. officer, director, or key executive?
>
> 4) The nature of the second income and its effect on the employer.

(*Id.* at 20-21). The arbitrator found that all of these factors fell in Isolatek's favor. First, he stated that the Employment Agreement had a non-compete provision. (*Id.* at 21). Second, he noted that Santomeno did not notify Isolatek about his desire to work with Flame Seal until March 9, 2009. (*Id.*). Third, he observed that Santomeno was an executive and therefore had a higher duty to Isolatek. (*Id.*). Fourth, Arbitrator Torres pointed out that Isolatek compensated

---

[5] The two products were Isolatek's CAFCO Spray Film TB-15 and Flame Seal's FX 100; "[b]oth products were designated for use as an intumescent fire retardant barrier to be utilized over foam." (*Id.* at 14).

6

Santomeno but did not receive the benefit of the bargain under the Employment Agreement because Santomeno failed to honor it. (*Id.*).

Based on these findings, the arbitrator determined that Isolatek was entitled to recoupment of Santomeno's wages, benefits, and bonuses for 2008 and 2009. (*Id.* at 22). He rejected Santomeno's argument that Isolatek suffered no economic loss from his actions because, while the competitive advantage he conferred on Flame Seal was difficult to calculate, Isolatek was not pursuing a claim against Flame Seal in tort. Rather, it was seeking recoupment of the precise amount it had paid Santomeno, an equitable remedy that fell within the Employment Agreement's very broad grant of authority to the arbitrator. (*Id.* at 21). The arbitrator then requested that the parties submit a post-hearing brief on whether Santomeno was entitled to a "Stay Bonus" provided for in the Employment Agreement. (*Id.* at 22).

E. Santomeno's Post-Hearing Brief

In his February 24, 2012 post-hearing filing, Santomeno also argued that he was entitled to keep the stay bonus because he received it prior to any contact with Flame Seal, and beyond the one year limitations period. (*Id.*). He did not, however, confine himself to the "stay bonus" issue, but instead raised arguments against the recoupment award.

First, he argued that the Employment Agreement's one year limitations period should limit the period for which Isolatek could recoup money it paid to Santomeno. Santomeno argued that, because the arbitrator ruled that Santomeno could not pursue any bonus claims arising prior to June 17, 2008, Isolatek likewise could "not recoup any monies paid to [Santomeno] prior to the one year of the filing of their arbitration claim." (Santomeno Ltr. to Arbitrator at 2 [ECF No. 1-10]).

Second, Santomeno highlighted the New Jersey Supreme Court's interpretation of the Second Restatement of Agency in *Cameco, supra. Cameco* stated that an employer could recoup compensation from a periodically paid, disloyal employee *for the period during which the employee committed acts of disloyalty.* (*Id.*). From February 10, 2008 through February 1, 2009, Santomeno claimed, he and Flame Seal did not communicate regarding Flame Seal's competing product; and the same is true for the period after April 17, 2009. (*Id.* at 2-3). Combining the one year limitations period with the absence

of disloyalty during these periods, Santomeno reasoned, would limit Isolatek's recoupment to February 1, 2009 through April 16, 2009. (*Id.* at 3).[6]

    F.  The Final Arbitration Decision and Award

On May 11, 2012, Arbitrator Torres issued a Final Decision and Award, which responded to Santomeno's post-hearing arguments.

Regarding the limitations period, the arbitrator stated:

> With regard to the applicable period for measuring damages, [Santomeno] raises the issue whether Isolatek's claims dating back to September 2007 were time barred based on the one year statute of limitations period recited within the employment contract. In this instance, [Santomeno] asserts that the "discovery rule" limits Isolatek's recovery to claims dating back to July 29, 2008, one year prior to their counter-claim being filed with the American Arbitration Association. Furthermore, [Santomeno] asserts that Isolatek had knowledge of [his] breach dating back to December of 2007, when [he] met with Kurt Neff[, Isolatek's Vice President of Marketing,] and he revealed to Neff that he was going to meet with another company in the industry. Based on the testimony adduced at the arbitration, I find that the information conveyed to Kurt Neff was not sufficiently specific to alert him to a breach of Santomeno's employment agreement.

> Accordingly, I find that [Santomeno]'s behavior prior to the filing of Isolatek's claims was geared to prevent the company from ascertaining his overtures and involvement with Flame Seal. Furthermore, the doctrine of equitable tolling is applicable here as Isolatek has met its burden of demonstrating that Santomeno's misconduct led to the

---

[6] Santomeno also argued that recoupment of his wages was not legally or equitably proportionate to any harm inflicted, because the amount of money he received from Isolatek far outpaced the $100,000 of gross sales of TB-15, the Isolatek product at issue. (*Id.*). He does not revive this dubious argument in his Motion to Vacate the Award.

expiration of the "applicable limitations period." <u>Bernoski</u> v.
<u>Zarinski</u>, 383 <u>N.J.</u> Super 127, 136 (App. Div. 2006)

(Final Decision and Award at 2 [ECF No. 1-9 at 5]).

Arbitrator Torres also rejected Santomeno's second argument that
Isolatek was not entitled to recoupment for periods when he refrained from
committing disloyal acts, and his third argument that the amount to be
recouped was inequitable compared to the gross sales of the product:

> The Appellate Division in <u>Simulation Systems Technologies</u>
> <u>v. Oldham</u>, infra, denied the recovery of damages for a
> disloyal employee where the record was "devoid of evidence
> which pinpoints the pay period in which each disloyal act
> was committed and the evidence shows the amount of
> compensation apportioned to that period." 269 <u>N.J.</u> Super.
> 107, 112 (App. Div. 1993). Here, Isolatek has clearly
> identified the periods of disloyalty and Santomeno's conduct
> demonstrated a continuum of disloyalty both preceding
> February 2008 and subsequent to February 2009. It would
> clearly be unjust enrichment if Santomeno were to retain the
> compensation paid by Isolatek for the period from February
> 2008 to 2009.

(<i>Id.</i> at 2-3 [ECF No. 1-9 at 5-6]).

Finally, the arbitrator found that Santomeno was entitled to keep the
"stay bonus" because Santomeno had fulfilled the requirements for the bonus
(remaining with Isolatek after a certain date) and because he had in any event
received that bonus payment outside the limitations period, over a year before
the arbitration claim was filed. (<i>Id.</i> at 3 [ECF No. 1-9 at 6]). Therefore, the
arbitrator permitted him to retain the stay bonus, even as it barred him from
receiving any further bonus payments. (<i>Id.</i>).

Arbitrator Torres then calculated the award due to Isolatek. The salary
and benefits, excluding taxes, that Santomeno received from Isolatek totaled
$323,752.00 in 2008 and $301,778.00 in 2009 for a total recoupment of
$625,530.00. (<i>Id.</i> at 4 [ECF No. 1-9 at 7]). Pursuant to the Employment
Agreement, the arbitrator awarded Isolatek $165,019.00 in attorney's fees and
$7,187.50 in costs. (<i>Id.</i> at 4-5 [ECF No. 1-9 at 7-8]). The sum of the award to
Isolatek was $797,736.50.

On June 20, 2012, Santomeno timely filed his Motion to Vacate the Arbitration Award pursuant to section 10 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 10. On July 2, 2012, Isolatek filed its opposition to Santomeno's Motion to Vacate and a Cross-Motion to Confirm the Arbitration Award.

The parties' Motions are properly before this Court pursuant to the FAA, 9 U.S.C. § 1 *et seq.*, and 28 U.S.C. § 1331. Venue is proper in the District of New Jersey pursuant to § 9 of the FAA, 9 U.S.C. § 9, and 28 U.S.C. § 1391.

## II.   LEGAL STANDARD

The FAA evinces a strong presumption in favor of enforcing arbitration awards. *Brentwood Medical Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005). Section 9 of the FAA states, in relevant part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. In short, unless the arbitration award is vacated pursuant to § 10 or modified or corrected under § 11 of the FAA, the award "must" be confirmed. Section 10(a) provides the grounds upon which a district court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Further, an arbitration "award is presumed valid unless it is affirmatively shown to be otherwise . . . ." *Brentwood Med. Assocs.*, 396 F.3d at 241.

"The Supreme Court has held that 'the courts play only a limited role when asked to review the decision of an arbitrator.'" *Wilkes Barre Hosp. Co. v. Wyo. Valley Nurses Ass'n Pasnap*, 453 Fed. App'x 258, 260 (3d Cir. 2011) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). "The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract . . . . As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Misco*, 484 U.S. at 36 (quoting *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). This is because "arbitration is a matter of contract," *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960), so if an "'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Eastern Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000) (quoting *Misco*, 484 U.S. at 38). "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem." *Enter. Wheel & Car*, 363 U.S. at 597.

These standards give a district court little leeway in reviewing an arbitration award associated with a collective bargaining agreement. *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995) ("District courts have very little authority to upset arbitrator's awards."). If the award "draws its essence" from that agreement, the court must confirm it. *Brentwood Med. Assocs.*, 396 F.3d 237 at 240 (citation and internal quotation marks omitted). "An arbitrator's award draws its essence from a collective bargaining agreement if its interpretation can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Id.* at 241 (emphasis in original) (internal citation omitted); *see News Am. Publ'ns, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990) (A court "may

11

not overrule an arbitrator simply because it disagrees with the arbitrator's construction of the contract," but must enforce the award so long as "the arbitrator has *arguably* construed or applied the contract, regardless of [whether] . . . a court is convinced that [the] arbitrator has committed a serious error." (emphasis in original)).

   "[W]e must enforce an arbitration award if it was based on an arguable interpretation and/or application of the collective bargaining agreement, and may only vacate it if there is no support in the record for its determination or if it reflects manifest disregard of the agreement, totally unsupported by principles of contract construction." *Brentwood Med. Assocs.*, 396 F.3d at 241 (internal citation omitted). A court's role is not "to correct factual or legal errors made by an arbitrator." *Id.* at 240 (internal citation omitted). Thus, a court will not vacate an arbitration award even if the court thinks the basis for it is ambiguous or the court disagrees with (1) the arbitrator's conclusions under the law, *id.* at 241, (2) the arbitrator's assessment of the credibility of witnesses, or (3) the weight the arbitrator has given to testimony. *News Am. Publ'ns, Inc.*, 918 F.2d at 24. An award may be overturned, however, if the arbitrator ignored the plain language of a contract, or essentially rewrote material terms of the contract. *Exxon Shipping Co. v. Exxon Seamen's Union*, 788 F. Supp. 829, 835 (D.N.J. 1992); *PMA Capital Ins. Co. v. Platinum Underwriters*, 400 Fed. App'x 654 (3d Cir. 2010).

   In addition to § 10(a) of the FAA, the Third Circuit has recognized three common law grounds that justify vacating an arbitration award: (1) its findings cannot "be rationally derived either from the agreement between the parties or from the parties' submissions to the arbitrators" and the terms of the award are "completely irrational," *Mut. Fire, Marine & Inland Ins. Co. v. Norad Reins. Co.*, 868 F.2d 52, 56 (3d Cir. 1989) (quotations omitted); (2) the arbitrator has shown manifest disregard for the law. *See, e.g., Tanoma Min. Co., Inc. v. Local Union 1269, United Mine Workers of Am.*, 896 F.2d 745, 749 (3d Cir. 1990). Manifest disregard means that the arbitrator was or must have been "fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Westra Constr., Inc. v. U.S. Fid. & Guar. Co.*, Civ. No. 1:03-0833, 2007 WL 1031438 at *2 (M.D. Pa. Mar. 29, 2007) (quoting *Black Box Corp. v. Markham*, No. 03-3910, 2005 WL 546649 at *2 (3d Cir. Mar. 29, 2005)); and (3) the award violates well-defined and dominant public policy as "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Eastern Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62–63 (2000); *see also Arco*

12

*Enters. v. Operative Plasterers' & Cement Masons Int'l Ass'n, Local No. 31*, 124 Fed. App'x 710 (3d Cir. 2005) (not precedential) (arbitration awards may be vacated if in conflict with clear and dominant public policy).[7]

"[T]he test used to probe the validity of an arbitrator's decision is a singularly undemanding one." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 295-96 (3d Cir. 2010) (internal quotation and citation omitted). Consequently, the party moving to vacate an award "faces a steep uphill battle." *Id.*

## III.  ANALYSIS

Santomeno argues that the petition should be partially vacated because the arbitrator exceeded his authority by granting Isolatek recoupment for the

---

[7] The Third Circuit has noted that the common law exceptions may not survive the Supreme Court's holding in *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576 (2008), but it declined to weigh in on whether the exceptions are still valid. *Rite Aid of N.J. v. United Food Commercial Workers Union, Local 360*, 449 F. App'x 126, 129, 129 n. 3 (3d Cir. 2011) (not precedential) (questioning the continued vitality of such claims in light of *Hall Street*); *see also Stolt–Nielsen S.A. v. Animalfeeds Int'l Corp.*, 130 S. Ct. 1758, 1768 n. 3 (2010) (reserving issue of whether "manifest disregard" standard survives *Hall Street*). *Hall Street* held that parties cannot contractually modify the FAA's confirmation, vacatur, and modification standards, 9 U.S.C. §§ 9-11, which are the exclusive avenues for judicial review. *Hall St.*, 552 U.S. at 588.

The Third Circuit has indicated that the "completely irrational" and "manifest error in law" tests may survive as a judicial gloss on 9 U.S.C. § 10(a)(4). *See Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 220, 220 n. 2 (3d Cir. 2012). Because *Hall Street* did not squarely address the issue and the Third Circuit declined to rule on *Hall Street*'s impact on these common law grounds for review, I will assume that they survive. *See CD & L Realty LLC v. Owens-Illinois, Inc.*, 11-CV-7248, 2012 WL 4463878 (D.N.J. Sept. 25, 2012) ("Because *Hall Street* only directly answered the narrow question of whether parties could, through contract, supplement the statutory grounds to vacate an arbitration award, and because the Third Circuit has declined to weigh in on this issue, the Court will assume that these common law exceptions survive *Hall Street*." (citing *Rite Aid*, 449 F. App'x at 129 (assuming, without deciding, that manifest error and public policy grounds remain viable))). They do not alter the result here.

entirety of 2008, when the Employment Agreement's limitations period prohibited the award of any damages prior to July 29, 2008, one year prior to the date Isolatek filed its counterclaims. (Santomeno Br. at 5-7 [ECF No. 1-1]). In waiting to file until then, Santomeno reasons, Isolatek had "<u>waived its right</u>" to recover damages for that period. (*Id.* (emphasis in original)).

Isolatek replies that the arbitrator considered this argument and rejected it in the Final Decision and Award (excerpted *supra* in Section II.F). (Isolatek Br. at 12-13 [ECF No. 4-1]). What Santomeno is really doing, Isolatek surmises, is "assert[ing] a claim of legal and factual errors by the arbitrator, which are not reviewable." (*Id.* at 13 (citing *Major League Umpire's Ass'n v. American League of Professional Baseball Clubs*, 357 F.3d 272, 279 (3d Cir. 2004))).

I find that the arbitrator's decision to award recoupment for 2008 and 2009 draws its essence from the Employment Agreement, and therefore it must be confirmed.

In analyzing the appropriate period for which Isolatek should receive recoupment, the arbitrator acknowledged that the Employment Agreement provided for a one year limitations period to file arbitration claims and further stated that a failure to file within that period would constitute a waiver of those claims. However, Arbitrator Torres applied the well-established New Jersey discovery rule and doctrine of equitable tolling. *E.g., Bernoskie v. Zarinsky*, 383 N.J. Super. 127, 135, 890 A.2d 1013, 1018 (App. Div. 2006) ("[a] statute of limitations may be equitably tolled if the wrongdoer has concealed his identity, thereby preventing the injured party from bringing suit within the limitations period.") (citing cases); *see also R.A.C. v. P.J.S., Jr.*, 192 N.J. 81, 100, 927 A.2d 97, 107 (stating that equitable tolling of limitations is applied only in narrowly-defined circumstances, including "where one party has engaged in overt trickery that induced plaintiff to forgo timely filing of complaint" (referring to *Freeman v. State*, 347 N.J. Super. 11, 31, 788 A.2d 867 (App. Div.), *certif. denied*, 172 N.J. 178, 796 A.2d 895 (2002))). The arbitrator's finding that Santomeno had concealed his disloyal acts, thus tolling the limitations period, had a sufficient basis.

In so finding, the arbitrator acted within the authority that the Employment Agreement granted him: "all of the power of a court of law and equity, including the power to order discovery, in the arbitrator's discretion, as is available under the current Federal Rules of Civil Procedure, and to grant legal and equitable remedies." (Empl. Agr. ¶ 6(g) [ECF No. 1-4]). A judge has the power to equitably toll a period of limitations in a situation such as the one

here. Therefore, Arbitrator Torres's award drew its essence from the Employment Agreement.

Arbitrator Torres perhaps could have imposed recoupment back to September 2007, when Santomeno first engaged in discussions with Flame Seal. He did not explicitly explain why recoupment should only begin in 2008. But it is not my role to probe this line-drawing, which operated in Santomeno's favor, because the award construes and applies the Employment Agreement. *Eastern Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000); *see Brentwood Medical Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 240 (3d Cir. 2005) (stating that a court's task is not "to correct factual or legal errors made by an arbitrator" (internal citation omitted)); *News Am. Publ'ns, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990) (a court's disagreement with the arbitrator's conclusions under the law does not provide grounds to vacate an arbitration award).

Santomeno argues that the partial summary judgment, applying the one year limitations period to his bonus claims, requires a symmetrical ruling limiting Isolatek's recoupment claims. It does not – or rather I cannot find that the arbitrator was compelled to apply the Agreement in this way – because the situations were not parallel. The difference lay in the application of equitable tolling based on Santomeno's concealment of the nature and scope of his contacts with the competitor.

In addition, I note that Santomeno has not moved to vacate the rest of the award. I find that the balance of the award likewise draws its essence from the Employment Agreement.

In short, Arbitrator Torres did not exceed his powers; he rendered a reasoned opinion that addressed the parties' claims. Therefore, I must, and will, confirm his award.

IV.    **CONCLUSION**

For the reasons stated above, Santomeno's Motion to Vacate the Award is **DENIED** and Isolatek's Motion to Confirm the Award is **GRANTED**. An appropriate order follows.

KEVIN MCNULTY, U.S.D.J.

Dated: January 7, 2013

16